IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TRANSFIRST HOLDINGS, INC., | § | |
| TRANSFIRST MERCHANT SERVICES, | § | |
| INC., and PAYMENT RESOURCES | § | |
| INTERNATIONAL, LLC, | § | |
|     *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:06-CV-2303-P |
| | § | |
| ANDREW M. PHILLIPS, DOMINIC J. | § | |
| MAGLIARDITI, JOHN S. BLAUGRUND, | § | |
| PAYMENT RESOURCES | § | |
| INTERNATIONAL, a Nevada Corporation, | § | |
| SSF HOLDINGS, LLC, | § | |
| DII INVESTMENTS, INC., and | § | |
| TP INVESTMENTS, LLC, | § | |
|     *Defendants*. | § | |

## MEMORANDUM OPINION & ORDER

Now before the Court are Emergency Motion of Defendants Dominic J. Magliarditi and

DII Investments, Inc. To Dismiss for Lack of Personal Jurisdiction and Improper Venue

("Magliarditi Motion") and Defendant John Blaugrund's Motion to Dismiss for Improper Venue

("Blaugrund Motion"), both filed on January 8, 2007.  Responses were filed on January 15, 2007,

and replies were filed on January 19, 2007.  For the reasons stated below, the Magliarditi Motion

is hereby DENIED and the Blaugrund Motion is also DENIED.  Plaintiffs' also filed a motion for

leave to file a surreply on January 30, 2007.  A response was filed on the same day, and a reply

was filed on February 8, 2007.  In light of this Order, the Court hereby DENIES AS MOOT the

Motion for Leave to File a Surreply.

I.      BACKGROUND

Plaintiff TransFirst Holdings, Inc. ("TransFirst") is a provider of transaction processing

services and payment processing technology.  (App. Pls.' Resp. Magliarditi Mot. at 1.)  In March

of 2004, TransFirst purchased substantially all the assets of Defendant Payment Resources

International ("PRI, Inc."), a Nevada Corporation operating out of Newport Beach, California.

(*Id*. at 2)  Among the principal shareholders of PRI, Inc. were Defendants Nick Magliarditi and

John Blaugrund.  (*Id*.)  Pursuant to the Asset Purchase Agreement ("APA") of March 1, 2004

TransFirst paid over $30 million for the assets of PRI, Inc.  PRI, Inc's assets were acquired by

TransFirst's wholly owned subsidiary Payment Resources International, LLC ("PRI").  (*Id*.)

The APA is a lengthy and detailed document and by its own terms compromises a

number of other materials attached as schedules and exhibits.  (*See generally id.* at 7 - 72.)  The

APA was negotiated in California and Dallas, Texas.  (*Id*. at 4.)  Pursuant to its own terms, the

APA closed in Dallas on March 1, 2004.  (*Id*. at 32-33.)  The APA includes non-compete

provisions.  The owners of PRI Inc., including Defendants Magliarditi and Blaugrund, agreed

that they would not directly or indirectly (i) engage in competing business; (ii) render competitive

services for existing clients; (iii) become agents, consultants, or representatives of competing

businesses; (iv) become a shareholder, joint venturer or owner of a competing business; or (v)

attempt to solicit any TransFirst customer or client to conduct business with a competitor or

persuade a customer or client to reduce the amount of business it conducted with TransFirst.  (*Id*.

at 54.)  The APA does not contain a forum selection clause for dispute resolution.  (*See id*. at 7 -

72.)  The APA does provide that "the legal relations between the parties and the adjudication and

the enforcement thereof shall be governed by and interpreted and construed in accordance with the internal substantive laws of the state of Texas." (*Id*. at 69.)

The sale of PRI Inc.'s assets to TransFirst under the APA was conditioned in part on the understanding that Magliarditi and Blaugrund, among others, would serve in PRI. Pursuant to their obligations under the APA, Magliarditi and Blaugrund entered into identical Employment Agreements ("EAs") with PRI. (*Id*. at 89-104; 105-120.) The EAs provided that Magliarditi and Blaugrund would be employed as senior vice presidents. (*Id*. at 90; 106.) Section 1.01 of the EAs state that the employee

> agrees to devote his full business time, energy and skill to his duties at Employer. Employee's duties will include, but not be limited to, those duties normally performed by a company senior vice president as well as any other reasonable duties that may be assigned to him from time to time by the Employer's Board of Directors. (*Id*.)

The EAs were executed on the same day that the APA closed, March 1, 2004. In August of 2004, the management comittee of PRI elected Magliarditi and Blaugrund to serve as vice presidents of PRI. (*Id*. at 121.)

Section 6.02 of the EAs ("Section 6.02") is a dispute resolution provision containing a forum selection clause. The provision reads, in relevant part,

> In the event of any dispute or claim relating to arising out of Employee's employment relationship with Employer, this Agreement or the termination of Employee's employment with Employer for any reason (including, but not limited to, any claims of breach of contract, wrongful termination or age, sex, race, sexual orientation, disability or other discrimination or harassment), Employee and Employer agree that all such disputes shall be fully, finally and exclusively resolved by means of a court trial conducted in (i) the Superior Court of Orange County, California, or (ii) any federal district court located in that county. (*Id*. at 96; 112.)

Section 4.01 of the EAs ("Section 4.01") discusses termination for cause.  The definition of

"cause" includes "any material breach by Employee of any of the terms of this Agreement, the

Asset Purchase Agreement, or any other agreement entered  into between Employee and

Employer."  (*Id*. at 92; 108.)  The APA similarly defines termination for cause when discussing

the ability of Defendants to achieve Earn Out amounts.  Earn-Out amounts were additional sums

to be paid by TransFirst should the business reach certain growth targets over three years.

(Compl. at 9, ¶ 31.)  Thus, they could be affected by terminations for cause.  The APA states that

the employment of Defendants Magliarditi and Blaugrund (referred to as "Principal

Shareholders") could be deemed terminated for cause where there had been a

> material breach by such Principal Shareholder of any of the terms of this Agreement
> or any other agreement entered into between such Principal Shareholder and
> Holdings or Purchaser (including without limitation any non-disclosure,
> confidentiality, non-compete, and/or employment agreement.  (*Id*. at 22.)

Magliarditi is a California resident.  He is president of Defendant DII Investments Inc.

("DII"), a Nevada corporation.  (Magliarditi Mot. at 3, 5.)  Magliarditi asserts that neither he nor

DII has ever transacted any business in Texas.  (*Id*. at 4, 5.)

Plaintiffs make several allegations of wrongful conduct against Defendant Magliarditi.  It

is alleged that at the time of entering into the APA, Magliarditi made fraudulent representations

directed at the TransFirst office in Dallas, particularly about the non-compete provisions.  (App.

Pls.' Resp. Magliarditi Mot. at 2.)  Plaintiffs allege that Magliarditi, through DII, engaged in

competitive activity in violation of the APA and actively concealed such competition from PRI

and TransFirst.  (*Id*. at 4.)  Plaintiffs allege that on June 1, 2006, Magliarditi informed

TransFirst's accounting personnel, Charlene Strahs, that TransFirst owed $160,000 to Easy Pay

Financial Services LLC ("Easy Pay") for merchant referral services. (*Id*.) According to Plaintiffs, Magliarditi was an officer of Easy Pay, a direct competitor and customer of PRI and TransFirst. (*Id*.) Plaintiffs also allege that Magliarditi, acting individually and on behalf of DII, directed false communications to TransFirst offices in Dallas Texas over the course of three months. (*Id*.) It is alleged that Magliarditi falsely denied any association with Easy Pay, particularly in an email to Andrew Rueff, a TransFirst officer in Dallas, TX. (*Id*. at 125.) Plaintiffs assert that Magliarditi never conceded the true nature of his ownership of Easy Pay. (*Id*. at 5.) Plaintiffs submit documents to show Magliarditi included the value of his ownership of Easy Pay on DII's balance sheet in calculating his personal net worth. (*Id*. at 126.) Magliarditi ultimately resigned from employment in November of 2006. (Compl. at 17, ¶ 58.)

John Blaugrund was terminated from employment on December 14, 2006. He received a termination letter stating that he owned and operated a competitive company and deprived TransFirst and its affiliate companies of his honest services. The letter stated that Blaugrund had breached his fiduciary duties as an employee and corporate officer. Blaugrund was deemed "terminated for 'Cause'." (App. Reply Blaugrund Mot. at 83.)

Plaintiffs' assert claims against Magliarditi and Blaugrund based on RICO violations, fraud, breach of fiduciary duties, and breach of the APA. (Compl. at 17-30.) Magliarditi and DII assert that this Court lacks personal jurisdiction over them, and Magliarditi, DII, and Blaugrund seek to have this case dismissed based on improper venue.

## II.      LEGAL STANDARD

The plaintiff bears the burden of establishing a district court's personal jurisdiction over a

nonresident defendant who moves for dismissal.  *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.

1994).  When a court rules on a challenge to personal jurisdiction without an evidentiary hearing,

the plaintiff has only to establish a *prima facie* case of personal jurisdiction.  *See id*.  The Court

must accept as true all uncontroverted allegations in the complaint, and all factual conflicts

presented by the parties must be resolved in favor of the plaintiff.  *See id*.

The standard for determining if venue is proper is similar to the personal jurisdiction

standard.  28 U.S.C. § 1406(a) instructs District Courts to dismiss or transfer a case if venue is

improper where filed.   A party may move to dismiss an action based on improper venue pursuant

to Fed. R. Civ. P. 12(b)(3).  *See Psarros v. Avior Shipping, Inc.*, 192 F.Supp.2d 751, 754 n.4

(S.D. Tex 2002); *Mitsui & Co. (USA), Inc. v. MIRA M/V*, 111 F.3d 33, 37 (5th Cir. 1997).  Once

a defendant raises the issue of proper venue by motion, the burden of sustaining venue lies with

the plaintiff.  *Psarros*, 192 F.Supp.2d at 753.  In the absence of an evidentiary hearing, a plaintiff

meets this burden by setting forth facts that, taken as true, establish venue.  *Id*.  The court should

accept all uncontroverted facts as true and resolve all disputed facts in favor of the plaintiff.  *Id*.

## III.     ANALYSIS

### A.      Personal Jurisdiction

Defendants Magliarditi and DII assert that this court does not have personal jurisdiction

over them.  To exercise personal jurisdiction over a nonresident defendant, the Court must

determine that due process standards are satisfied by engaging in a two-pronged analysis.  First,

the Court determines whether the defendant has purposefully established "minimum contacts" in the foreign state.  If so, the Court must then assess whether the exercise of personal jurisdiction would offend "traditional notions of fair play and substantial justice."  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-75, 476 (1985); *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).  Defendant Magliarditi also argues that even if these tests are met, this court cannot exercise personal jurisdiction over him because he is protected by the fiduciary shield doctrine.

### 1.   <u>Minimum Contacts</u>

Sufficient minimum contacts can be established through a showing of the existence of general or specific jurisdiction.  *See Freudensprung v. Offshore Technical Serv. Inc.*, 379 F.3d 327, 343 (5th Cir. 2003).  Plaintiffs argue in this case that specific jurisdiction exists.  "A court may exercise specific jurisdiction over a nonresident defendant if the lawsuit arises from or relates to the defendant's contact with the forum state."  *Icee Distribs. Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 591 (5th Cir. 2003).  Specific jurisdiction exists where a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  *Burger King*, 471 U.S. at 475.  The "purposeful availment" necessary for specific jurisdiction protects a defendant from being brought into a jurisdiction based solely on "random," "fortuitous," or "attenuated" contacts.  *Id*. A single act may form a sufficient basis for personal jurisdiction if the claim arises from that single act and the defendant can reasonably foresee being brought into court in the forum state. *See Icee Distribs.*, 325 F.3d at 591.  Merely contracting with a resident of the forum state does not sufficiently support the exercise of jurisdiction over the defendant.  *See Id*.

a.   *Personal Jurisdiction Over Magliarditi*

The commission of an intentional tort aimed at the forum state will satisfy the purposeful availment inquiry of the minimum contacts requirement.  *See Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir. 2001); *Wien Air Alaska Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999).  In *Fowler v. Broussard*, No. Civ.A.3:00-CV-1878-D, 2001 WL 184237, * 5, the court found that the introduction of evidence of misrepresentations transmitted to a Dallas, Texas office through e-mail and telephone conversations was sufficient to assert personal jurisdiction.

Plaintiffs argues that the Court has specific jurisdiction over Magliarditi because he directed fraudulent statements and misrepresentations at Texas.  These allegedly fraudulent communications include false representations in the APA, emails, letters, and phone calls directed towards TransFirst's homes office in Texas.  TransFirst's evidence of these fraudulent conduct consists primarily of the signed Declaration of Mark W. Travis, CFO and Senior Vice President of TransFirst.  (*See generally* App. Pl.'s Resp. Magliarditi Mot. at 1-5.)  Plaintiffs assert that Magliarditi directed false representations to TransFirst in Dallas, TX to induce TransFirst to enter into the APA.  These alleged fraudulent representations were specifically in regards to the non-compete provisions of the APA.  (*Id*. at 4.)  It is further alleged that Magliarditi directed false representations to TransFirst in Dallas, Texas to conceal Magliarditi's ownership of Easy Pay between August and November of 2006.  (*Id*. at 4-5.)  Plaintiffs submit a copy of an email to Andrew Rueff, who they assert is a TransFirst officer, in which Magliarditi denies any affiliation with Easy Pay.  (*Id*. at 125.)  Plaintiffs attempt to show the fraudulent nature of the email by submitting a copy of Magliarditi's DII balance sheet in which Easy Pay is

included as an asset.  (*Id*. at 126.)  These false representations, according to Plaintiffs, were directed at TransFirst's officers in Dallas, Texas. (*Id*. at 5.)

Plaintiffs argue that these fraudulent representations directed towards Dallas, Texas are sufficient minimum contacts for the court to establish personal jurisdiction over Magliarditi, since an intentional tort aimed at a forum states satisfies the standard.  Magliarditi disputes the admissibility and sufficiency of the evidence that Plaintiffs present to establish their *prima facie* case of personal jurisdiction.  Magliarditi makes a number of challenges to Plaintiffs' evidence, but the court need not deal with every challenge as even a single contact may be sufficient if the defendant can reasonably foresee being brought before the court of the forum state.  *See Icee Distribs.*, 325 F.3d at 591.  Magliarditi contends that there is no evidence that he did not intend to comply with the APA non-compete provisions, and thus there is no evidence that he made fraudulent representations directed at Texas.  While Magliarditi may dispute the truth of Mr. Travis's statements, a court must resolve all disputed facts in favor of the plaintiffs when it considers personal jurisdiction.

Magliarditi asserts that Plaintiffs have merely made conclusory allegations.  To the contrary, Plaintiffs did submit the Declaration of Mark W. Travis as evidentiary support of the allegedly tortious activity.  The court in *Wien Air Alaska*, 195 F.3d at 212, established minimum contacts through the use of a sworn affidavit and records of communications, such as faxes and letters.  Similarly, in *Double G Energy Inc. v. At Gas Gathering, Inc.*, No.Civ.A 3:05-CV-0749-P, 2005 WL 1837953, at * 4, n.3 (N.D. Tex. July 28, 2005),  the Court found that a declaration was sufficient evidence for the purpose of establishing a *prima facie* case of personal jurisdiction.

The Declaration, copies of emails, and the balance sheet submitted to the Court are competent evidence to establish personal jurisdiction.

Magliarditi challenges the truth of Plaintiffs' factual allegations.  Plaintiffs allege that Magliarditi's email to Andrew Rueff, stating that he was not an officer, director, or owner of Easy Pay, was fraudulent.  Magliarditi contends that this was a true statement, and to demonstrate this submits Easy Pay's Articles of Organization, which lists only Charles Oliverio as an Easy Pay officer.  (App. Magliarditi Mot. at 21-23.)  Plaintiffs have submitted a balance sheet prepared by Magliarditi which lists Easy Pay among the assets of DII.  Magliarditi has conceded an ownership interest in DII.  Given the contradictory evidence of whether the statements about Magliarditi's relationship with Easy Pay were true or false, the court must resolve the issue in Plaintiffs' favor.  Since Plaintiffs submit evidence tending to show that Magliarditi made fraudulent communications, the Court may accept Plaintiffs argument for personal jurisdiction based on intentionally tortious acts directed at Texas.

Magliarditi also contends that Andrew Rueff was an officer of PRI, working in California, and therefore any representations made to him would not have been directed at Dallas, Texas.  He submits a PRI document appointing Andrew Rueff as vice president and secretary of PRI in support of his contention.  (App. Magliarditi Reply at 26.)  However, in his declaration, Mark Travis, a CFO and Senior Vice President of TransFirst, contends that Andrew Rueff is an officer of TransFirst.  Once again, where facts are disputed, the court must resolve the issue in favor of Plaintiffs.  Plaintiffs have presented evidence that any false statements made to Rueff would have been aimed at TransFirst in Dallas, Texas.

**Memorandum Opinion & Order**
**3:06-CV-2303-P**
**Page 10 of 29**

Plaintiffs allege that Magliarditi and DII never revealed to Plaintiffs that through DII, Magliarditi was engaged in directly competitive activity.  (App. Resp. Magliarditi Mot. at 4.) Magliarditi asserts that if such conduct did occur, the harm was directed towards PRI, a California corporation.  While PRI would have been harmed by the concealment of competitive activity, TransFirst, in Dallas, Texas, was also harmed.  Magliarditi had obligations to TransFirst under the APA.  Magliarditi should reasonably have foreseen that the harm resulting from fraudulently concealing competitive activity would flow to Texas.  Thus, if competitive activity was concealed as Plaintiffs allege, the harm from the intentional tort would have been directed, at least in part, at Texas.  The exercise of personal jurisdiction over Magliarditi is appropriate.

> **b.**     *Personal Jurisdiction Over DII*

Plaintiffs have alleged that Magliarditi, through DII, engaged in activity competitive with the business of TransFirst, and then concealed such activity.  Magliarditi was the sole owner and president of DII.  (*Id*. at 4.)  Plaintiffs allege that when making fraudulent representations to TransFirst, Magliarditi was acting on behalf of DII.  (App. Resp. Magliarditi Mot. at 4.)  Any knowledge Magliarditi had about the propriety of concealing competitive activity, in light of the APA, and any knowledge he had about the effects of tortious actions on Texas must be ascribed to DII as well.  Plaintiffs allege and present supporting evidence through the Travis Declaration that DII, through the actions of its owner and officer Magliarditi, engaged in tortious conduct with foreseeable effects in Dallas.  This is a sufficient allegation of minimum contacts to support the court's exercise of personal jurisdiction.

2.        **Fiduciary Shield Doctrine**

Magliarditi argues that the fiduciary shield doctrine prevents this Court from exercising jurisdiction over him.  The fiduciary shield doctrine holds that "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual."  *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985).  "The doctrine shields a nonresident defendant from suit in a forum state when his or her only contacts with that state are in a representative capacity."  *Pessina v. Rosson*, 77 S.W.3d, 293, 200 (Tex. App.–Austin 2001.)  The doctrine does not protect a corporate officer who engages in tortious conduct, even if such acts were performed within the scope of employment.  *Fowler v. Broussard,* No. Civ.A.3:00-CV-1878-D, 2001 WL 184237, at *4 (N.D.Tex. Jan. 22, 2001).

The fiduciary shield doctrine is inapplicable here.  It is alleged that Magliarditi concealed his competitive activity on his own behalf and on behalf of DII, and was not acting in his capacity as an officer or employee of PRI.  The fiduciary shield doctrine protects a corporate officer from being haled into court, in districts that would not otherwise have jurisdiction over him for activities solely related to his corporate position.  Precedent in no way suggests that the fiduciary shield doctrine should protect a corporate officer from jurisdiction where he engaged in activity on his own behalf, and not in his capacity as a corporate officer.  *See Pessina*, 77 S.W.3d at 300.

Furthermore, Plaintiffs alleged that Magliarditi committed fraud when he represented in the APA that he would not engage in competitive activity.  This occurred before Magliarditi was even elected a PRI officer.  Therefore, he could not have been acting on behalf of PRI at the time

**Memorandum Opinion & Order**
**3:06-CV-2303-P**
**Page 12 of 29**

of the events surrounding the execution of the APA.  The fiduciary shield doctrine would not prevent the exercise of personal jurisdiction with respect to these claims.

Magliarditi has not convincingly asserted a basis for the application of the fiduciary shield doctrine since Plaintiffs allegations center around activity unrelated to his corporate position.  Even if Magliarditi was acting as an officer of PRI, as he asserts, Plaintiffs allege he engaged in intentional tortious activity.  Allegations of tortious activity overcome the application of the fiduciary shield doctrine.  *See Fowler*, 2001 WL 184237, at *4.  The fiduciary shield doctrine does not prevent this court from exercising jurisdiction over Magliarditi.

### 3.       Traditional Notions of Fair Play and Substantial Justice

Magliarditi argues that it would offend traditional notions of fair play and substantial justice for the Court to exercise personal jurisdiction over him.  Magliarditi contends that the venue clause in the EA gave him a justifiable expectation that a dispute such as this would be litigated in Orange County, California.  According to Magliarditi, allowing this proceeding to occur in Texas violates his due process rights under the Texas and United States constitutions.

A defendant bears the burden of showing that this Court's assertion of jurisdiction would offend traditional notions of fair play and substantial justice.  *See Burger King*, 471 U.S. at 476-77.  Once minimum contacts are established, as they have been above, the defendant must make a "compelling case" against the exercise of personal jurisdiction.  *Wien Air Alaska*, 195 F.3d at 215.  A court must balance the burden on the defendant to litigate in this forum; the plaintiff's interests in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the state's shared interest in furthering fundamental social policies.  *Id*.

Defendant Magliarditi's argument as to why the exercise of jurisdiction over him offends traditional notions of fair play and substantial justice is far from compelling.  He has not shown that there would be any burden on him in litigating in Texas.  As will be discussed below, Magliarditi was not justified in expecting the forum selection clause of his EA to apply to a suit of this nature.  Magliarditi has not shown that the state or judicial system has an interest in this case being litigated in California.  Since minimum contacts have been established, and Magliarditi has not made a compelling case otherwise, the Court finds its exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.

### B.     Venue

Defendants Magliarditi, DII, and Blaugrund assert that Plaintiffs' claims should be dismissed because venue is improper.  DII asserts that 28 U.S.C. § 1391(b)(2) does not provide a basis for venue in this District in relation to the claims against it.  Defendants Magliarditi and Blaugrund argue that venue is not proper because the EAs contain a valid, enforceable forum selection clause that requires this litigation to be pursued elsewhere.[1]  The validity and enforcement of a forum selection clause is a question of law.  *Mitsui & Co.*, 111 F.3d at 35.

### 1.     DII

Plaintiffs rely on 28 U.S.C. § 1391(b)(2) as the basis to establish that this is an appropriate venue.  Under this provision, an action may be brought in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred."  DII contends that

---

[1] Defendants Magliarditi and Blaugrund have filed separate motions contending that a valid arbitration agreement between the parties requires that this matter be arbitrated.  Thus, they do not desire for this case to be transferred to another judicial district, but rather seek dismissal.

it was not a party to the APA, received no payment from Texas under the APA, and undertook no actions in this district.

A court may find venue is proper where a defendant directs communications toward a particular forum if the communications are sufficiently related to the cause of action. *See U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 153 (2d Cir. 2001); *FC Investment Group LC v. Lichtenstein*, 441 F.Supp.2d 3, 11 (D.D.C. 2006) (interpreting *Titan* and a parallel statutory provision, 28 U.S.C. § 1391(a)(2)). The fact that a plaintiff residing in a particular judicial district feels the effect of a defendant's conduct in that district does not necessarily mean that the events or omissions occurred there. *See Bigham v. Envirocare of Utah*, 123 F.Supp.2d 1046, 1048 (S.D. Tex. 2000).

Plaintiffs' allegations do more than state that the effects of Defendants' actions were felt in the forum state. Plaintiffs allege that DII, through the actions of its officer and owner Magliarditi, directed false communications to TransFirst officers in Dallas, Texas. (App. Resp. Magliarditi Mot. at 4). These false communications are the focus of Plaintiffs' claims of fraudulent representations. Therefore, they are sufficiently related to the cause of action to support venue. The direction of fraudulent misrepresentations to Dallas, Texas can establish that the events or omissions giving rise to the cause of action occurred in Dallas, Texas. Plaintiffs have made allegations and offered factual support sufficient for the purpose of establishing that this district is the proper venue for the claims against DII.

2.      **Magliarditi and Blaugrund**

Defendants Magliarditi and Blaugrund argue that venue is improper in this district

because each of their EAs contained valid, enforceable forum selection clauses that require this

litigation be conducted elsewhere.  Section 6.02 of the EAs read, in relevant part,

> In the event of any dispute or claim relating to arising out of Employee's employment
> relationship with Employer, this Agreement or the termination of Employee's
> employment with Employer for any reason (including, but not limited to, any claims
> of breach of contract, wrongful termination or age, sex, race, sexual orientation,
> disability or other discrimination or harassment), Employee and Employer agree that
> all such disputes shall be fully, finally and exclusively resolved by means of a court
> trial conducted in (i) the Superior Court of Orange County, California, or (ii) any
> federal district court located in that county.  (App. Resp. Magliarditi Mot. at 96; 112.)

Plaintiffs do not dispute that the dispute resolution provision and forum selection clause

of the EAs are valid and enforceable in relation to employment disputes.  Rather, Plaintiffs argue

that because the causes of action in this suit are unrelated to the employment relationship

between the parties, the forum selection clauses of the EAs are inapplicable.  Plaintiffs assert that

the fraud in the inducement claims and breach of the APA claims relate to the APA and not to

employment.  Further, the breach of fiduciary duty claims relate to Defendants roles as officers of

PRI, and not to their employment relationship with PRI.  Finally, Plaintiffs assert that the RICO

claims do not relate to Defendants' employment.

a.      *Is Section 6.02 of the EAs Necessarily Implicated by Claims of*
        *APA Violations?*

Defendants Magliarditi and Blaugrund both argue that the APA and the EA are integrated

and interdependent in such a way as to require the court to read the contracts together as one

agreement.  Therefore, a breach of one contract, would necessarily implicate the terms of the other.  Magliarditi and Blaugrund support this argument by citing references within the APA to the EAs.  For instance, Defendants' employment could be terminated for cause due to violations of the APA.  Magliarditi and Blaugrund were required to enter into their respective EAs as a condition of the APA.  The APA states that all schedules and exhibits are incorporated by reference into the APA, and the EAs are included among the schedules.  The EAs and APA were all executed on the same date, March 1, 2004.  Blaugrund cites *Nova Ribbon Product Inc. v. Lincoln Ribbon, Inc.*, Civ. A. No. 89-4340, 1992 WL 211544, *5 (E.D. Pa. Aug. 24 1992) for the proposition that where "documents are executed at the same time and are intertwined by the same subject matter, they should be construed together and interpreted as a whole.  This rule applies even though the parties to the separate writings may not be the same as long as the writings pertain to the same transaction and interpretation is aided by reading them together."

Defendants essentially argue that a violation of the APA is necessarily a violation of the EA.  Thus, the EA would be implicated in Plaintiffs' claims of APA violations, and the EA's forum selection clause would apply whenever there was a breach of the APA.  This interpretation of the contracts is not reasonable.  The EAs merely state that a violation of the APA may be a basis for termination of employment for cause.  (App. Resp. Magliarditi Mot. at 92, 108.)  This does not mean that a breach of the APA is automatically a breach of the EAs.  Blaugrund refers to Section 3.1(b)(v) and (vi) of the APA, which defines termination for cause to include a violation of the EA for the purpose of making determinations related to Earn-Out amounts.  The

purpose of 3.1(b)(v) and (vi) of the APA is not to link breaches of the EAs to breaches of the APA, but rather to set terms for Defendants ability to achieve Earn-Out amounts.

While the APA and EAs are certainly related, the Court does not find that reading the documents together aids in interpretation of either document because each document deals with, and was intended to deal with, a distinct aspect of the parties' relationship.  Even if the Court were to accept as true the proposition that the APA and EAs were interdependent and intertwined, it would still not be inclined to find that the dispute resolution provisions of the EAs were applicable to every cause of action against Magliarditi or Blaugrund arising out of the APA. The fact that two contracts were executed on the same day, by the same parties, and about the same general subject matter does not mean that the terms of one contract apply to the other contract.  The existence of the two separately signed documents indicates that the employment aspects of the relationship were distinct, to at least some degree, from the asset purchase aspects of the transaction.

The plain language of the EAs themselves limit the application of Section 6.02 to "any dispute or claim relating to or arising out of Employee's employment relationship with Employer, this Agreement [defined in the document as the Employment Agreement], or the termination of Employee's employment with Employer for any reason."  The plain language does not suggest an intent to cover obligations arising pursuant to the asset purchase aspects of the parties' relationship.  The EAs' dispute resolution provision is limited to employment matters

By comparing the contracts, it does not appear that in executing the EAs and the APA, the parties intended that every violation of the APA would result in a breach of an EA, and that

the EA's dispute resolution provision would become applicable.  The APA did not contain a forum selection provision, although the parties certainly knew how to create one.  The language of the contracts does not show that the parties intended the forum selection provision of the EAs, lodged in one document among the fifty or so attached to the APA, to apply to violations of the APA.  If the parties intended every violation of the APA to be litigated in Orange County, California, they could have set this out in the APA itself.  The APA contains a Texas choice of law provision, while the EAs mandate that California law apply.  (App. Resp. Magliarditi Mot. at 98; 114.)  If violations of the APA were necessarily violations of the EAs, the choice of law provisions in the two documents would conflict.  The mere fact that the APA and EAs were part of the same complex transaction does not suggest that the parties intended a violation of one agreement to trigger the provisions of the other, except where expressly stated.  It  is unreasonable to read the contract otherwise or suggest that the parties intended otherwise.

> **b.**    ***Do Plaintiffs' Claims Fall Within the Scope of Section 6.02 of the EAs?***

While not every breach of the APA invokes the provisions of the EAs, the Court must assess whether Plaintiffs' allegations in this case fall within the scope of the dispute resolution provisions of the EAs.  Section 6.02 of the EAs provides that

> [i]n the event of any dispute or claim relating to arising out of Employee's employment relationship with Employer, this Agreement or the termination of Employee's employment with Employer for any reason (including, but not limited to, any claims of breach of contract, wrongful termination or age, sex, race, sexual orientation, disability or other discrimination or harassment)

the claims shall be litigated in Orange County, California.  (App. Resp. Magliarditi Mot. at 96;

112.)  Magliarditi and Blaugrund argue that the claims against them do relate to their

employment relationships, while Plaintiffs contend that the causes of action and facts at issue are

separate from employment.

A court looks to the parties' contract to determine which causes of action are governed by

a forum selection clause.  *Marine Chance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 22 (5th Cir.

1998).   "[I]f the *substance* of [the plaintiff's] claims, stripped of their labels, does not fall within

the scope of the [forum selection] clause [ ], the clause[ ] cannot apply."  *Soil Bldg. Sys. v. CMI*

*Terex Corp.*, No. Civ.A.3:04-CV-0210-G, 2004 WL 1283966, at *4 (N.D. Tex. June 9, 2004)

(alterations in original).

Defendants argue for an expansive interpretation of the contractual language, stating that

the EAs dispute resolution provisions are very broad.  Section 6.02 covers "any dispute or claim

relating to or arising out of Employee's employment relationship with Employer."  As discussed

above, the court is unconvinced that the parties intended for Section 6.02 of the EAs to apply so

broadly that every kind of dispute about the APA would always be covered by the EA.

Magliarditi and Blaugrund argue that the EAs use expansive language such as "any dispute" in

order to encompass nearly all suits involving Magliarditi and Blaugrund.  However, the language

of the contract itself suggests that the parties intended to limit the dispute resolution provisions of

the EAs to traditional employment-related issues.  The claims must relate to or arise out of the

employment relationship, which suggests more than a tangential connection to employment is

necessary for the forum selection clause to apply.  Section 6.02 specifically lists certain types of

disputes that are covered, including discrimination, wrongful termination, and harassment. While this list is not exhaustive, it illuminates the understanding of the parties as to what kind of disputes would be governed by Section 6.02 of the EAs. The parties clearly were contemplating the dispute resolution provisions of the EAs to apply to traditional employment disputes.

Defendants note that included in the list of types of disputes to be resolved under Section 6.02 is "any claims of breach of contract." Section 6.02 does not explicitly limit the forum selection provision to breaches of the EAs. The Court does not find that this language changes its analysis. It is unreasonable to assert that the parties intended that this parenthetical phrase would make every dispute related to an APA violation subject to the terms of the EAs. The better reading is to understand the term in the EAs to refer to employment-related contracts.

i.    *Fraud, Breach of the APA*

Plaintiffs' argue that their claims for fraud and breach of the APA are not related to Magliarditi or Blaugrund's employment relationship. The Court agrees that these causes of action relate to the APA and not to employment or the employment contract. These causes of action and the facts at issue involve representations made and obligations incurred as part of the asset purchase transaction. This transaction is separate from the parties' employment relationship. Therefore, these claims do not fall within the scope of the employment contract's dispute resolution provision.

Defendant Blaugrund argues that his termination letter stated that he was terminated for breach of the APA and the EAs. (App. Reply Blaugrund Mot. at 83.) He argues that this means that the terms of the EA are necessarily relevant to the APA-based claims at hand. This

argument is unavailing because, whatever the reasons for firing Blaugrund, this suit is not about his termination from employment.  Rather, Plaintiffs allege fraud, breach of the APA, and RICO claims.  Therefore, even though a breach of the EA might have occurred, that breach is not relevant to this suit because the claims do not concern a breach of the EAs.  Therefore, the forum selection provisions of the EA are not applicable to these claims.

ii.     *Breach of Fiduciary Duty, RICO*

While the claims related to fraudulent representations and breach of the APA do not appear to be employment-related, it is not so clear whether Plaintiffs' claims based on RICO and breach of fiduciary duties are covered by the dispute resolution provisions of the EAs.  The RICO claims are based on mail and wire fraud, allegedly undertaken to deprive Plaintiffs of honest services.  (Compl. at 18.)  The breach of fiduciary duty claims are based on Magliarditi and Blaugrund's positions with PRI.  Plaintiffs assert that the breach of fiduciary duty claims relate solely to Magliarditi and Blaugrunds roles as corporate officers and not to their roles as employees.  Maintaining this distinction is difficult in light of the fact that each held only one position – that of senior vice president.  *Cf. Loy v. Harter*, 128 S.W.3d 397, 404-05 (Tex. App.–Texarkana 2004) (finding employment agreement pertained to party's role as employee (CFO) of corporation and not to his role as a *director*).  Determining the scope of the EAs' coverage depends upon whether the Defendants' duties as corporate officers can be separated from their obligations as employees.  If these two aspects of Defendants' roles with PRI cannot be separated, then Plaintiffs' allegations fall within the scope of the EAs because the claims relate to Defendants' responsibilities as employees.  If the role of officer and employee can be

**Memorandum Opinion & Order**
**3:06-CV-2303-P**
**Page 22 of 29**

divided, then the EAs are not necessarily implicated in this lawsuit and the forum selection clause would not necessarily be applicable here.

Plaintiffs cite cases involving the applicability of a contract's arbitration provisions to tort claims.  *See Ford v. NYLCARE Health Plans of the Gulf Coast*, 141 F.3d 243, 245, 250 (5th Cir. 1998); *Hearthshire v. Braeswood Plaza Ltd. Partnership v. Bill Kelly Co.*, 849 S.W.2d 380, 391 (Tex. App.–Houston 1993).  In *Ford*, 141 F.3d at 250, the contract stated that all disputes "arising out of or relating to" the contract must be arbitrated.  The *Ford* court's analysis focused on whether the cause of action could be maintained independent of the contract to determine whether the claim was related to the contract.  *Id.* at 251.  In *Hearthshire*, 849 S.W.2d at 383, the relevant contract read, "[a]ll claims or disputes between the Contractor and the Owner arising out [of] or relating to the Contract, or the breach thereof, shall be decided by arbitration."  In deciding whether the arbitration provision applied, the *Hearthshire* court similarly focused on whether reference to the contract was necessary in order to maintain the plaintiff's tort claims.

These cases are inapposite to this situation where the EAs' forum selections clause covers matters broader than disputes arising out the EAs themselves.  Section 6.02 of the EAs covers disputes "arising out of Employee's employment relationship with Employer, this Agreement, or the termination of Employee's employment."  This contract provision applies to more than disputes arising out of the employment agreement – it applies to matters arising out of the employment relationship itself as well.  The test of whether the action could be maintained independently of the contract is not helpful where the dispute resolution provision explicitly encompasses matters beyond the scope of the contract.

**Memorandum Opinion & Order**
**3:06-CV-2303-P**
**Page 23 of 29**

The Court believes that Defendants Magliarditi and Blaugrund's roles as corporate officers cannot be distinguished from their roles as employees for the purposes of the RICO claims for deprivation of honest services or the breach of fiduciary duty claims.  Although a corporate officer is not necessarily an employee by virtue of holding his position (*see* William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 266 (2006), in this case Magliarditi and Blaugrund were clearly considered employees under the EAs.  Importantly, the EAs state that Magliarditi and Blaugrund will be employed as senior vice presidents.  It does not appear that the parties contemplated a distinction between the roles of officer and employee. Section 1.01 of the EAs provide that each Defendant will "devote his full business time, energy and skill to his duties at Employer. " (App. Resp. Magliarditi Mot. at 90; 106.)  Defendants' duties included "duties normally performed by a company senior vice president." (*Id.*)  The substance of the breach of fiduciary duty and RICO claims relate to the services Magliarditi and Blaugrund were required to render as employees under the EAs.  These claims, as alleged, could not be brought in the absence of the employment relationship.

The plain language of the EAs purport to encompass all claims arising out of the employment relationship.  The Court can find no principled way to separate the duties owed as a fiduciary and corporate officer from those owed as an employee where Defendants were employed as corporate officers, specifically as senior vice presidents.  Plaintiffs' claims based on RICO and breach of fiduciary duty are related to Defendants' obligations and responsibilities as employees and corporate officers.  The Court must find that these claims arise out of the

employment relationship.  While the claims could be maintained without any reference to the EAs, the forum selection provisions of the EAs encompass these claims.

While the forum selection clause of the EAs may cover the RICO and breach of fiduciary duty claims, the Court nevertheless declines to give effect to the forum selection clause in the interest of judicial economy.  "A motion to enforce a forum selection clause is governed by 28 U.S.C § 1404(a)" ("§ 1404(a)").  *Brock v. Entre Computer Centers, Inc.*, 740 F.Supp. 428, 431 (E.D. Tex 1990) (citing *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 27-28 (1988)).  Section 1404(a) reads, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  A "district court must weigh the plaintiff's forum choice against considerations of convenience, cost, judicial economy, and expedition of discovery and trial processes."  *Brock*, 740 F.Supp. at 431.  The factors to be considered under 1404(a) are (1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) the convenience of witnesses, and (4) the interest of justice.  *Stewart Organizations*, 487 U.S. at 28.  The presence of a forum selection clause is not dispositive, but "a significant factor to figure centrally in the district courts' calculus."  *Brock*, 740 F.Supp. at 431-32 (citing *Stewart Organization*, 487 U.S. at 28-29.)

Courts often choose not to enforce forum selection clauses when to do so would contravene the interests of judicial economy.  In *Brown v. Petroleum Helicopters Inc.*, 347 F.Supp.2d 370, 374 (S.D. Tex. 2004), the court noted that since some claims would not be transferred out of the district, severing and transferring the claims subject to the forum selection clause would increase cost and inconvenience for the parties.  *Id*.  The court held that "because

all the 1404(a) factors [were] neutral or weigh against transfer," and because requiring litigation in two courts would not "serve the interests of judicial economy," the court would not enforce the forum selection clause. *Id.* Similarly, in *Somerset Marine Inc. v. Olympic Marine Co.*, No. Civ.A. 97-3451, 1998 WL 433801, *2 (E.D. La. 1998), the court declined to give effect to a forum selection clause where the court had personal jurisdiction over all parties. The court stated, "transferring only the cross-claim to another venue makes little sense in terms of judicial economy, economy to the parties, and convenience to the parties and witnesses." *Id.* The court also noted that "one fact-finder should have all the evidence before it." *Id.*

18 U.S.C. § 1965 ("§ 1965") is a statutory venue provision that applies specifically to RICO claims.[2] Section 1965 has been interpreted to establish that "if one defendant before the court has the required minimum contacts with the forum state, then, *other* parties are subject to nationwide service of process." *Hawkins v. Upjohn Co.*, 890 F.Supp. 601, 606 (E.D. Tex. 1994). With § 1965, Congress has shown an intent to allow plaintiffs to bring RICO claims against multiple defendants in one forum where, in the absence of the statute, venue or jurisdiction in

---

[2] **18 U.S.C. § 1965 – Venue and process**
**(a)** Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.
**(b)** In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.
**(c)** In any civil or criminal action or proceeding instituted by the United States under this chapter in the district court of the United States for any judicial district, subpenas issued by such court to compel the attendance of witnesses may be served in any other judicial district, except that in any civil action or proceeding no such subpena shall be issued for service upon any individual who resides in another district at a place more than one hundred miles from the place at which such court is held without approval given by a judge of such court upon a showing of good cause.
**(d)** All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

that forum might not otherwise be proper.  *See Butcher's Union Local No. 498 v. United Food and Commercial Workers*, 788 F.2d 535 (9th Cir. 1986); *Snider*, 672 F.Supp. at 981.

In *Snider v. Lone Star Art Trading Co., Inc.*, 672 F.Supp. 977, 979 (E.D. Mich 1987) the court refused to give effect to a forum selection clause contained in one of six agreements.  The *Snider* court states, "Equity, as well as an efficient administration of justice, militate against requiring a RICO claim involving six Defendants (and not a claim in contract) to be brought in the location which is specified in a contract with one of the Defendants." *Id*.  The court further supported its determination by looking to § 1965.  The *Snider* court noted that "the RICO venue provision evinces Congress' desire to give to a plaintiff the authority to bring suit [wherever] the transaction occurred." *Snider*, 672 F.Supp. at 981.  The contract was governed by Texas law, and the Court found that, under Texas law, forum selection clauses were disfavored.  Therefore, the Court held that "under Texas law, the broad RICO venue statutory section takes precedence over a venue provision in a private [contract]." *Id*. at 982-83.

California law is the governing law designated by the EAs.  (App. Resp. Magliarditi Mot. 98; 114.)  In California, a forum selection clause is prima facie valid, but can be set aside if enforcement is not reasonable under the circumstances.  *See Furda v. Superior Court*, 161 Cal. App.3d 418, 425 (1984).  Enforcement of a forum selection may be unreasonable where it would violate the principle of judicial economy.  *See Bancomer, S.A. v. Superior Court*, 44 Cal. App. 4th 1450, 1462 (1996) (finding it  unreasonable to enforce a forum selection clause where a party would be required to litigate similar matters simultaneously in two different forums).

The Court will not enforce the parties' forum selection clause because, given the circumstances at hand, it would not be in the interest of justice or judicial economy to sever the RICO and breach of fiduciary claims against Blaugrund and Magliarditi from the other claims in this case.  The Court does have personal jurisdiction over all the defendants in this suit, and venue has been uncontested or been found proper as to all of the claims apart from the forum selection clause.   To dismiss some of the claims against two of the defendants in this multi-defendant, multi-claim lawsuit would result in similar facts and arguments being brought before, and decided by, two different fact finders.  The principles of judicial efficiency and economy weigh in favor of retaining the RICO and breach of fiduciary duty claims here rather than handling the claims in a piecemeal fashion and running the risk of conflicting judgments.

The breach of contract and fraud causes of action against Blaugrund and Magliarditi will have to be defended in this forum.  These claims involve the same core of facts and similar legal theories.  Since some claims will be litigated in this forum, the parties will be inconvenienced by having other related claims decided elsewhere.  As some of Magliarditi and Blaugrund's claims will be litigated here, their expectations regarding the forum the claims would be litigated in does not factor heavily in the analysis. *See Nippon Fire & Marine Ins. Co. v. M/V Spring Wave*, 92 F.Supp.2d 574, 577 (E.D. La. 2000).

In addition, the Court finds that the RICO venue statute, § 1965, provides another basis for it to decline to enforce the forum selection clause.  In this case, venue is proper for all claims, and only the forum selection clause would suggest otherwise.  The remaining RICO claims against defendants other than Blaugrund and Magliarditi will be litigated in this district.  This

court, by declining to apply the forum selection clause of the EAs, acts in keeping with the

Congressional purpose of § 1965 to bring all RICO claims and Defendants involved in the

alleged scheme before one court.

Interpreting the forum selection clause of the employment contracts in light of California

law further supports this court's maintenance of the claims in this court.  Under California law, a

court may decline to enforce a forum selection clause where it would be unreasonable to do so.

In this case, for the reason of judicial economy discussed above, it would be unreasonable to

sever particular claims against Blaugrund and Magliarditi from the rest of the action.  Both the

RICO venue statute and principles of judicial economy should take precedence over the parties'

contractual choice of forum.

The Court believes that the interests of judicial economy dictate that the forum selection

clause not be enforced in these circumstances.  Therefore, although the dispute resolution

provisions of the EAs would apply to the breach of fiduciary duty and RICO claims, the Court

does not find that these claims should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendants' Motions.  In light of

this Order, the Court also DENIES AS MOOT Plaintiffs' Motion for Leave to File a Surreply.

**IT IS SO ORDERED.**

Signed this 1st day of March 2007.

_Jorge A. Solis_
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE

**Memorandum Opinion & Order**
**3:06-CV-2303-P**
**Page 29 of 29**