IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TRANSFIRST HOLDINGS, INC., | § | |
| TRANSFIRST MERCHANT SERVICES, | § | |
| INC., and PAYMENT RESOURCES | § | |
| INTERNATIONAL, LLC, | § | |
|     *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:06-CV-2303-P |
| | § | |
| ANDREW M. PHILLIPS, DOMINIC J. | § | |
| MAGLIARDITI, JOHN S. BLAUGRUND, | § | |
| PAYMENT RESOURCES | § | |
| INTERNATIONAL, a Nevada Corporation, | § | |
| SSF HOLDINGS, LLC, | § | |
| DII INVESTMENTS, INC., and | § | |
| TP INVESTMENTS, LLC, | § | |
|     *Defendants*. | § | |

## MEMORANDUM OPINION & ORDER

Now before the Court are

1. Defendant John S. Blaugrund's 12(b)(6) Motion to Dismiss for Failure to State a Claim ("Blaugrund Jan. 8 Mot."), filed on January 8, 2007. A response was filed on February 5, 2007. No reply was filed.

2. Defendants DII Investments Inc. ("DII") and Dominic J. Magliarditi's Motion to Dismiss Pursuant to FRCP 12(b)(6) and 9(b), filed on January 8, 2007. A response was filed on February 5, 2007, and a reply was filed on February 20, 2007.

3. Defendants Payment Resources International, Andrew M Phillips, SSF Holdings LLC ("SSF"), and TP Investments LLC's ("TPI") Motion to Dismiss Pursuant to FRCP 12(b)(6) and 9(b), filed on January 15, 2007. A response was filed on February 5, 2007, and a reply was filed on February 20, 2007.

    4.      Defendant John S. Blaugrund's Supplemental Motion to Dismiss Pursuant to FRCP 12(b)(6) and 9(b), filed on February 16, 2007. A response was filed on March 8, 2007. A reply was filed on February 20, 2007.[1]

After careful consideration, for the reasons discussed below the Court hereby DENIES (1) Blaugrund's Jan. 8 Motion and GRANTS the Motions to Dismiss of (2) DII and Magliarditi, (3) Phillips, SSF, and TPI, and (4) Blaugrund.

## I.    BACKGROUND

Plaintiff TransFirst Holdings, Inc. ("TransFirst") is a provider of transaction processing services and payment processing technology. (Compl. at 2.) In March of 2004, TransFirst purchased substantially all the assets of Defendant Payment Resources International ("PRI, Inc."). (*Id.*) Among the principal shareholders of PRI, Inc. were Defendants Dominic Magliarditi, John Blaugrund, and Andrew Phillips (collectively, "individual Defendants"). (*Id.*) Pursuant to the Asset Purchase Agreement ("APA") of March 1, 2004 TransFirst paid over $30 million for the assets of PRI, Inc. PRI, Inc's assets were acquired by TransFirst's wholly owned subsidiary Payment Resources International, LLC ("PRI"). (*Id.*) The APA contained a covenant not to compete which was to preclude the individual Defendants from engaging in competitive conduct. (*Id.* at 3.) At the time of the APA's execution, the individual Defendants also entered into Employment Agreements ("EAs"), making them corporate officers of PRI. (*Id.* at 2-3.)

Plaintiffs have alleged that the individual Defendants, through various corporate entities, have engaged in directly competitive conduct in violation of the APA. Plaintiffs allege

---

[1] The Court will consider the Motions to Dismiss described in items (2), (3), and (4) collectively because the latter two motions incorporate by reference the arguments of DII and Dominic Magliarditi's Motion to Dismiss (2), without offering any new arguments. Similarly, the respective replies incorporate by reference the reply brief of DII and Magliarditi, without offering any new arguments. When the Court cites to the brief and reply of Magliarditi and DII, it will be referring to the collective motions.

Defendants created and executed a "fraudulent scheme orchestrated by the Employees to divert corporate opportunities from Plaintiffs for their own benefit and to receive 'kickbacks' from competing entities and Plaintiffs' customers for referrals of merchant accounts for payment processing services." (Compl. ¶ 11.)  Further, Plaintiffs allege that Defendants used the mail and interstate wire communications to orchestrate and carry out their scheme (Compl. ¶ 12.)  The Complaint identifies certain companies with whom Defendants entered into agreements with, transacted funds (over interstate wire) with, and generally did business with, and that the mails and interstate wire was a means of accomplishing this conduct.  (*See* Compl. ¶¶ 42-45; 47-49; 53-54.)  Plaintiffs allege that these activities were directly competitive with and diverted business from PRI.  Further, Plaintiffs allege that Defendants actively attempted to conceal these activities, particularly through fraudulent emails, letters, and faxes in 2006.  (Compl. ¶¶ 55-58.)

Plaintiffs have advanced a number of claims against Defendants, including two counts pertaining to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), specifically 18 U.S.C. § 1962(c) ("§ 1962(c)") for mail and wire fraud, and 18 U.S.C. § 1962(d) ("§ 1962(d)") for a RICO conspiracy.  Defendants have moved to dismiss under Fed. R. Civ. P. ("Rule") 12(b)(6) on the basis that Plaintiffs have not properly stated a RICO claim, and under Rule 9(b) for failing to sufficiently plead fraud.  Defendant Blaugrund also moves to Dismiss under Rule 12(b)(6) because he alleges Plaintiff brought suit without complying with the terms of the EA.

## II.   LEGAL STANDARDS

Rule 12(b)(6) provides for the dismissal of a complaint when a defendant shows that the plaintiff has failed to state a claim for which relief can be granted.  A motion to dismiss for failure to state a claim is viewed with disfavor and should rarely be granted.  *Lowrey v. Texas*

*A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997); *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).  Under the rule of *Conley v. Gibson*, 355 U.S. 41 (1957), a claim should not be dismissed unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley*, 355 U.S. at 45-46.  The Court must render its decision taking the complaint in the light most favorable to the plaintiff and taking its allegations as true.  *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

Rule 9(b) requires particularity in pleading the "circumstances constituting fraud."  This particularity requirement applies to the pleading of fraud as a predicate act in a RICO claim.  *Tel-Phonic Servs., Inc. v. TBS Int'l Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)(citing *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 430 (5th Cir 1990).  At a minimum, Rule 9(b) requires allegations of the particulars of "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Id*. (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1297, at 590 (1990)).  Allegations about conditions of the mind, such as defendant's knowledge of the truth and intent to deceive, however, may be pled generally.  Fed. R. Civ. P. 9(b); *Tel-Phonic Servs., Inc.*, 975 F.2d at 1139.  Rule 9(b) is read in connection with Rule 8 which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *See Landry*, 901 F.2d at 430.  While the pleading requirements under Rule 9(b) may be somewhat relaxed where the facts relating to an alleged fraud are within a perpetrator's knowledge, pleadings of fraud cannot be based on conclusory allegations or speculation.  *U.S. ex rel Thompson v. Columbia/HCA*

*Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997); *Cadle Co. v. Schultz*, 779 F.Supp. 392, 396 (N.D. Tex. 1991).

### III. ANALYSIS

#### A. Failure to State A Claim Under § 1962(c)

Section 1962(c) states,

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Defendants allege that Plaintiffs fail to state a claim under this provision because they do not adequately plead a distinction between RICO persons and a RICO enterprise, do not sufficiently allege predicate acts to invoke RICO, and do not sufficiently plead a pattern of racketeering. While the Court dismisses based on the failure to distinguish RICO persons from RICO enterprises, the Court will address the remaining challenges to the pleadings.

##### 1. Distinction Between RICO Persons and Enterprise

Section 1962 speaks of RICO persons and a RICO enterprise. A RICO person may be a corporation or an individual. *See* 18 U.S.C. § 1961(3). A RICO enterprise may be a legal entity such as a corporation or an association-in-fact.[2] *See* 18 U.S.C. § 1961(4). Plaintiffs have declared they are not alleging an association-in-fact enterprise. (Pls.' Resp. DII & Magliarditi's Mot. Dismiss ("Resp.") at 11). Defendants move to dismiss Plaintiffs' claim under § 1962

---

[2] An association-in-fact enterprise may consist of a collection of corporations or individuals not formally bound together as a legal entity. "To establish an "association-in-fact" enterprise [under 18 U.S.C. § 1961(4)] a plaintiff must show evidence of an ongoing organization, formal or informal, and . . . evidence that the various associates function as a continuing unit." *Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995).

because they assert Plaintiffs have failed to allege the RICO "persons" and the RICO "enterprise" are distinct.

Section 1962 requires some distinctness between the RICO defendant and the RICO enterprise. *See Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 162 (2001). *Kushner* addresses circumstances in which a "corporate employee, acting within the scope of his authority, conducts the corporation's affairs in a RICO-forbidden way." *Id*. at 163 (internal quotations omitted). In such circumstances, the Supreme Court stated, "the corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the statute that requires more 'separateness' than that." *Id*. In *Kushner*, an individual who was president and sole shareholder of a closely held corporation was considered distinct from the corporation itself. *Id*. at 160.

Defendants assert that the RICO allegations against Magliarditi, specifically in paragraphs 46-50 of the complaint, should be dismissed to the extent that they relate to conduct by DII. (DII and Magliarditi Reply ("Reply") at 5.) Defendants assert that there is no discernible distinction between Magliarditi and DII with respect to these allegations. Magliarditi is president and owner of DII. This situation is analogous to *Kushner*, in which the sole owner and president of a corporation was considered distinct from the corporation for RICO purposes. Defendants cite cases[3] which note there may be a RICO distinctness problem with a sole proprietorship with no employees beyond the owner (a "one-man show"). The case at hand is distinguishable because DII is a corporation rather than an unincorporated sole proprietorship. As long as the

---

[3] Defendants cite two circuit court cases prior to *Kushner*: *Guidry v. Bank of LaPlace*, 954 F.2d 278, 283 (5th Cir. 1992); *McCullough v. Suter*, 757 F.2d 142, 143 (7th Cir. 1985).

RICO person and enterprise are distinct entities with separate legal rights, the separateness requirement discussed in *Kushner* is met. This case need not be dismissed on the basis that Magliarditi and DII are not distinct.

Defendants raise other ways in which Plaintiffs' Complaint fails to distinguish RICO persons from the RICO enterprise. Plaintiffs are rather unclear in their response in defining the RICO players and their relationships to one another in the alleged scheme. Plaintiffs assert the individual Defendants are RICO persons who conduct RICO-prohibited activities through the enterprises of SSF and TPI. (Resp. at 10-11.) This allegation in the response is technically inconsistent with Plaintiffs' Complaint, which alleges that *all* Defendants are RICO persons (which would include the corporate Defendants and the individual Defendants) and that SSF, TPI, and DII, among others, are RICO enterprises. (Compl. ¶ 61, 62.)

Most problematic is Plaintiffs' treatment of DII. At one point in the response, Plaintiffs state DII is a corporate entity used to form the enterprises of SSF and TPI. (Resp. at 10-11.) At another point, Plaintiffs state that DII is both a RICO person due to its investment in SSF and a RICO enterprise based on Defendant Magliarditi's investment in DII and its discrete enterprise activities. (Resp. at 13, n.11.) While a corporation may be a RICO person or a RICO enterprise, the law is clear that they cannot be both at the same time: the person or persons must be distinct from the enterprise. *See Kushner*, 533 U.S. at 163; *Murphy v. Grisaffi*, No. 3:04-CV-0134-B, 2005 U.S. Dist. LEXIS 3849, * 8 (N.D. Tex, Mar. 14, 2005). A corporate defendant could simultaneously be a RICO person and a member of an association-in-fact enterprise (along with other corporations or individuals). *See Cadle, Co. v. Flanagan*, 271 F.Supp.2d 379, 387 (D.Conn. 2003). This is because the association-in-fact is an entity that is distinct from the

corporation itself. *See generally St. Paul Mercury Insurance Co. v. Williamson*, 223 F.3d 425, 446 (5th Cir. 2000). However, Plaintiffs have explicitly asserted that they have not alleged an association-in-fact enterprise. Plaintiffs may be attempting to assert multiple RICO schemes, in some of which DII is a RICO person and another corporate Defendant is the enterprise, and in some of which the individual Defendants are the persons and DII is the RICO enterprise. However, this is not apparent from the Complaint.

As currently pled, the § 1962(c) claim, insofar as DII is alleged to be both RICO person and enterprise, cannot be maintained. The Complaint is also deficient in stating a § 1962 claim because it alleges that the other corporate Defendants, such as SSF and TPI, are RICO persons and RICO enterprises, although Plaintiffs do not appear to have intended to make such allegations with regards to these Defendants. The language of the Complaint as it currently stands alleges entities such as SSF and TPI are RICO persons and enterprises. Therefore, the § 1962(c) claim must be dismissed.

### 2. Sufficiency of Allegations of Predicate Acts

18 U.S.C. § 1961(1) defines conduct that constitutes racketeering activity in a list of state and federal crimes. Individual acts of racketeering activity are known as "predicate offenses." The predicate offenses Plaintiffs allege in this case are mail fraud, under 18 U.S.C. § 1341 ("§ 1341"), and wire fraud, under 18 U.S.C. § 1343 ("§ 1343"). Defendants move to dismiss the § 1962 claims on the grounds that Plaintiffs fail to sufficiently allege predicate offenses.

The elements for RICO mail fraud are 1) a scheme to defraud by means of false or fraudulent representation; 2) interstate or intrastate use of the mails to execute the scheme; 3) the use of the mails by the defendant connected with scheme; and 4) actual injury to the plaintiff. *In*

*Re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993). The elements of a wire fraud claim under § 1343 are the same as those for a mail fraud claim except the use of the wire must be interstate. *Walsh v. America's Tele-Network Corp.*, 195 F.Supp.2d 840, 846 (E.D. Tex. 2002) (citing *Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir. 1988)). "It is under this framework, and the application of these elements with respect to the particularity requirement of Rule 9(b) that the court must analyze Plaintiffs' complaint to determine if the predicate acts of mail and wire fraud are adequately plead." *Id*. at 846-47.

      Defendants state in their motion, although they do not further pursue these arguments in their reply, that Plaintiffs' complaint is deficient in three ways. First, Defendants argue Plaintiffs fail to describe with adequate specificity the contents of the communications that are the basis for the mail and wire fraud claim. The Court rejects this argument because the Appendix to Plaintiffs' Complaint includes copies of the allegedly fraudulent emails and faxes. These documents provide the date or time the documents were transmitted, and notice of recipient and sender. Plaintiffs have described how the misrepresentation furthered the fraudulent scheme: Defendants used the mail and wire communications to conceal the scheme. (Compl. at ¶¶ 65(b); 76(b).) Under their wire fraud claim, Plaintiffs have alleged Defendants, in a system of kickbacks and referrals, caused funds to be transmitted across interstate lines as part of scheme to defraud Plaintiffs. (Compl. ¶ 65(i).) Defendants do not challenge the specificity of these claims, but only dispute the adequacy of the pleadings regarding two facsimiles, an email, a mailing and some writings of September 14-16, 2006. The Court declines to dismiss based on Defendants' claims of insufficient pleading of the contents of the allegedly fraudulent communications.

Second, Defendants state that Plaintiffs have not alleged a connection between the predicate acts and the injuries suffered. Plaintiffs allege that the acts of mail and wire fraud were to conceal the alleged scheme and thereby "lull" Plaintiffs into inaction, which allowed business to be diverted and caused Plaintiffs to be deprived of honest services. (*See* Compl. at ¶¶ 57, 59, 65(d) and (i), 67.) This is sufficient to show the relationship of the conduct and injury, and also to show how the conduct furthered the scheme.

Third, Defendants assert that Plaintiffs have not sufficiently alleged reliance. Reliance is not an element of statutory mail or wire fraud, but the Fifth Circuit requires its showing when mail or wire fraud is alleged as a RICO predicate. *See In Re Mastercard Int'l Inc.*, 313 F.3d 257, 263 (5th Cir. 2002). Plaintiffs allege that the fraudulent representations and omissions lulled them into inaction. (Resp. at 17.) "Mailings that serve[] to 'lull' the plaintiff into a false sense of security, postpone inquiries or complaints, or to lessen the suspect appearance of the fraudulent transaction are mailings in execution of the fraudulent scheme, violating the mail fraud statute." *Cadle Co. v. Shultz*, 779 F.Supp. at 400. Plaintiffs have alleged that Defendants' concealment prevented them from discovering Defendants' activities. (Compl. ¶ 59.) Reading the Complaint as a whole and in the light most favorable to Plaintiffs, the Court find this is a sufficient allegation of reliance.

### 3. Sufficiency of Allegations of Pattern of Racketeering Activity

To allege a pattern of racketeering activity as required by § 1962(c), Plaintiffs must allege at least two acts of racketeering activity within a ten-year period. *See* 18 U.S.C. § 1961(5). "To successfully allege that a defendant has engaged in a 'pattern' of racketeering activities, and has thereby violated RICO, the plaintiff must allege that racketeering activities have been sufficiently

continuous, that they relate to each other, and that they relate to the threat of continued criminal activity." *Cadle Co. v. Shultz*, 779 F.Supp. at 398. Continuity refers either to a closed period of repeated conduct or an open-ended period of conduct that by its nature projects in to the future with a threat of repetition. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241-42 (1989). Closed-ended continuity can be demonstrated by proving a series of related predicate acts extending over a substantial period of time. *Id*. at 242. Open-ended continuity may be shown where the predicate acts are a regular way of conducting the defendants ongoing business. *Id*.

Defendants assert that the requirement of continuity is not met because Plaintiffs fail to allege any facts demonstrating a relationship among the alleged episodes of criminal activity. Plaintiffs respond that both closed- and open-ended continuity are demonstrated in their Complaint. Plaintiffs allege open-ended continuity because they assert the alleged predicate acts were a regular way of doing business. Specifically, Plaintiffs allege that Defendants' regularly transmitted funds across interstate lines as part of their scheme of kickbacks and referral fees. (Compl. ¶¶ 65(i) and 76(i).) Plaintiffs allege that the alleged the wire and mail fraud was a regular way of conducting ongoing business from at least June 2004 until the filing of this litigation. (Compl. ¶ 11.) Plaintiffs meet the open-ended continuity requirements, and therefore have sufficiently pled a pattern of racketeering activity.

### B.      Failure to State a Claim Under § 1962(d)

Defendants assert that Plaintiffs' claim under § 1962 is impermissibly vague and merely parrots the statute while not offering specific allegations. A conspiracy to violate RICO is comprised of three elements: (1) knowledge by the defendant of the essential nature of the conspiracy; (2) the defendant's objective manifestation of an agreement to participate in the

conduct of the affairs of an enterprise; and (3) an overt act, which need not be a crime, in furtherance of the conspiracy. *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F.Supp. 995, 1005 (S.D. Tex. 1995). A RICO complaint "which merely implies with the conclusory allegation of a conspiracy that a defendant is responsible for someone else's fraudulent conduct is insufficient." *Id*. A RICO civil conspiracy complaint must specifically allege, at a minimum, an agreement to commit predicate acts. *Id*. Here, Plaintiffs allege the Defendants "agreed to commit, and ultimately did commit, predicate acts with knowledge that the predicate acts were part of a pattern of racketeering." (Compl. ¶ 76.) Further, Plaintiffs give approximate dates of the conspiracy, outline the objectives, and describe the predicate acts. (Compl. ¶¶ 69 -79.) These allegations are sufficient to sustain Plaintiffs' claim at this stage in the litigation. Defendants also allege that since the claim fails under § 1962(c), the conspiracy claim under § 1962(d) must also fail. *See Bonton*, 889 F.Supp. at 1005. Insofar as the Court is dismissing the Plaintiffs' claim under § 1962(c), claims of a RICO conspiracy under § 1962(d) would not be sustainable.

    C.    **Insufficient Specificity of Fraud Pleading**

Defendants allege that Plaintiffs have not met the standards of Rule 9(b) which require that allegations of fraud be pled with particularity. Mail and wire fraud, when predicate offenses to a RICO claim, must meet the requirements of rule 9(b). *Tel-Phonic Servs.*, 975 F.2d at 1139. Defendants contend that the mail and wire fraud predicate offenses, are not sufficiently pled. A plaintiff must "allege the time, place, and the contents of the representation upon which the fraud is based, as well as the identity of the person making the representation, and the objective of the fraud" to satisfy Rule 9(b). *FMC Int'l A.G. v. ABB Lummus Global Inc.*, No. Civ.A. H-04-3896, 2006 WL 213948, * 4 (S.D. Tex. Jan. 25, 2006). Defendants specifically allege that the

Complaint fails to describe the contents of the letter used to execute the scheme, and merely concluded the letter furthered or advanced the objective of the alleged scheme without describing how it did so.

As discussed above, Plaintiffs have provided the copies of the actual communications, and thereby the contents, time and place, and recipient and sender of each communication. The fact Plaintiff actually has provided many of the communications that underlie the mail and wire fraud claims seriously undercuts Defendants' arguments that fraud was not pled with the requisite specificity. Plaintiffs have also specifically described how the representations furthered Defendants' scheme: the alleged misrepresentations were attempts at concealing Defendants' involvement in the corporate entities that were "at the very heart of the fraudulent scheme." (Compl. at ¶¶ 65(b); 76(b).) The Court has already found that alleging concealment to lull the Plaintiffs into a false sense of security is adequate to show how mail or wire fraud furthered the objective of the alleged scheme.

### D. Failure to Give Notice of Termination

Defendant Blaugrund asserts that this case should be dismissed under Rule 12(b)(6) because of failure to comply with terms of the Employment Agreement ("EA"). Article III, Section 3.1 (iv) of the EA requires that Blaugrund be given 30 days notice before he is terminated. (*See* Blaugrund Jan. 8 Mot. at 3.) Blaugrund argues this suit should be dismissed because he was not given such notice. However, there is no requirement that Blaugrund be given 30 days notice before suit is filed against him. The EA does not condition, explicitly or implicitly, the filing of suit for any claim on the giving of notice before termination of employment. There is nothing in the EA suggesting that this claim is improperly before the

Court. Therefore Blaugrund's 12(b)(6) Motion filed on the basis of failure to comply with the EA is not a basis upon which the Court will dismiss Plaintiffs' claims.

## IV. CONCLUSION

For the Foregoing Reasons, the Blaugrund Jan. 8 Motion is hereby DENIED and the remaining Motions to Dismiss are GRANTED. Plaintiffs are granted 20 days in which to amend their complaint.

**IT IS SO ORDERED.**
Signed this 18th day of May 2007.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE